PAUL B. SNYDER
United States Bankruptcy Judge
1717 Pacific Ave, Suite 2209
Tacoma, WA 98402

✓ FILED
___ LODGED
___ RECEIVED

**May 18, 2006**

MARK L. HATCHER
CLERK U.S. BANKRUPTCY COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA
_____DEPUTY

# UNITED STATES BANKRUPTCY COURT
# WESTERN DISTRICT OF WASHINGTON AT TACOMA

In re:

AMERICA THE BEAUTIFUL DREAMER, INC.,

Debtor.

Case No. 05-47435

**MEMORANDUM DECISION**

**NOT FOR PUBLICATION**

This matter came before the Court on May 8, 2006, on the motion of America the Beautiful Dreamer, Inc. (Debtor) to Assume Unexpired Lease of Store Number 104 at Westfield Shopping Center, and the motion of Westfield Corporation, Inc. (Westfield) to Compel Rejection of Debtor's Nonresidential Real Property Lease at Vancouver Mall. Based on the pleadings, testimony, exhibits and arguments presented, the Court's findings of fact and conclusions of law are as follows:

## FINDINGS OF FACT

On August 16, 2005, the Debtor filed a petition for relief under Chapter 11, Title 11. The Debtor is the lessee of a single space known as Store No. 104 at Westfield Vancouver Shopping Center under a lease (Lease) that expires February 28, 2010. Westfield is the agent for the lessor Vancouver Mall ll, LP. At the time of filing, the Debtor was in default on the Lease for rent owing for April, May, June, and July, and the first 15 days of August, 2005.

MEMORANDUM DECISION - 1

The Debtor has paid all postpetition rent owing Westfield. At the hearing on May 8, 2006, the Debtor conceded that the principle currently owing Westfield, exclusive of attorney fees and costs, is $110,067.66, and that Westfield is entitled to an interest rate of 10% pursuant to the terms of the Lease.

Pursuant to 11 U.S.C. § 365(b)(1), the Debtor proposes to cure the default by paying Westfield $50,000.00 in eight equal monthly installments of $6,250.00, with a balloon payment on the remaining balance to be made on January 31, 2007. In its post-hearing briefing, the Debtor indicated that it will be able to cure the default under the same terms in the event approximately $70,000.00 in attorney fees and costs are included in the cure amount pursuant to § 365(b)(1)(B).

Westfield opposes the Debtor's motion to assume the Lease, and asks the Court to grant its motion to compel rejection of the Lease.

## CONCLUSIONS OF LAW AND DISCUSSION

The primary issue before the Court is whether the Debtor has satisfied the requirements of 11 U.S.C. § 365(b)(1) to assume the Lease.

In order to assume the Lease, the Debtor must satisfy three criteria under 11 U.S.C. § 365(b)(1). First, the Debtor must cure or provide "adequate assurance that the [debtor] will promptly cure" the Westfield rent default. Second, the Debtor must compensate Westfield or provide "adequate assurance that the [debtor] will promptly compensate" Westfield for its pecuniary loss. Finally, the Debtor must provide "adequate assurance of future performance" under the Lease.

Tthe first issue presented under 11 U.S.C. § 365(b)(1)(A), is whether a cure is "prompt." This will depend on the facts and circumstances of each case. In re Embers 86th

St., Inc., 184 B.R. 892, 900 (Bankr. S.D. N.Y. 1995). Courts generally consider the following facts in determining whether the "prompt cure" requirement is satisfied: (1) the debtor's past financial performance, (2) any inequitable acts by the non-debtor party, (3) harm or prejudice suffered by the non-debtor party resulting from past defaults and (4) the term of the contract or lease.

Westfield contends that a cure period of eight months is not prompt and that requiring it to wait eight months to be paid, places it in a position similar to an unsecured lending institution. This is because the Debtor proposes to pay only $50,000 of the past due Lease payments through January, 2007, leaving the possibility that in excess of $130,000 as a balloon payment would still be due on January 31, 2007. The risk of non-payment thus has been shifted to Westfield.

Conversely, the Debtor contends that based on the facts of this case, eight months is a prompt cure period. The Debtor asserts that it has been a tenant of the Vancouver Mall for 29 years and it is only within the last year that it has experienced financial difficulties with respect to its Lease, it has paid all of its postpetition obligations, reduced expenses, is current on its taxes, and has no secured debt. Furthermore, the Lease is not due to expire until February, 2010. The Debtor indicates that it now has the ability to obtain financing to satisfy Westfield's claims.

The Court concludes that taking into consideration the evidence presented, the cure as proposed by the Debtor is not prompt within the meaning of 11 U.S.C. § 365(b)(1)(A). There is no evidence as to why the Debtor cannot refinance earlier than January 31, 2007, given its alleged improved financial picture, particularly considering it has no post-petition unsecured debt except for the past due Lease obligations, is current on its taxes and has no secured

MEMORANDUM DECISION - 3

debt. There is also no evidence as to why it cannot increase the amount of the monthly payment since the Debtor's equity interest holders have agreed to make any monthly shortfall. Under the Debtor's proposal, at the end of the eight month period, Westfield will only have received $50,000 of the potential $180,000 plus owing. Under the cure, as proposed, the Court agrees with Westfield that it will be required to assume most of the risk of non-payment. This is not adequate assurance of a prompt cure as required by 11 U.S.C. § 365(b)(1)(A). Under the facts and circumstances of this case, "prompt" within the meaning of this section would be satisfied by the Debtor paying the past due obligation in equal monthly installments through January 31, 2007, or by paying the proposed monthly payment and refinancing the remaining debt no later than September 29, 2006.

The second and third requirements of § 365(b)(1) require adequate assurance of the debtor's ability to compensate Westfield for its pecuniary losses and to make future payments. These requirements are often determined by the Debtor's financial stability. While adequate assurance does not require a guaranty, there must be a firm commitment by the debtor to cure the default and an ability to do so. Courts often consider the following factors in determining whether a debtor has provided adequate assurance of its ability to cure a default: "(1) evidence of profitability, (2) a plan to earmark money exclusively to cure the default and (3) the willingness and ability of the debtor or its proposed assignee to fund cure payments." Risa Lynn Wolf-Smith and Wendy Chung Rossiter, Executory Contracts: How Prompt is "Prompt?" 23-Feb. Am. Bankr. Inst. J. 1, 44 (2004).

In this case, the Court concludes that the Debtor has provided adequate assurance of payment of Westfield's pecuniary loss and future performance under the Lease. First, the Debtor has met every postpetition obligation that has accrued. It has paid Westfield between

MEMORANDUM DECISION - 4

$22,000 and $23,000 per month for postpetition rent, and it has paid approximately $85,000 to U.S. Bank postpetition to eliminate a secured obligation. It is also current on its tax obligations and postpetition trade debt.

Second, the Debtor proposes to use all of its available disposable income to cure the Westfield default. The Debtor's disposable income derives from revenue obtained in operating its store at the Vancouver Mall. Because the Debtor has satisfied the secured debt of U.S. Bank, the Debtor has increased the disposable income available to cure the Lease defaults. Moreover, with the exception of small claims and administrative expenses, all of the Debtor's disposable income will go to cure the Lease before any unsecured claims receive distributions. Additionally, the Debtor's equity interest holders will make up any shortfall in the Debtor's monthly revenues as needed to pay the monthly installments to Westfield.

Finally, the Debtor's projected revenues demonstrate the Debtor's ability to perform the Lease in the future. Don Thompson, the Debtor's president and 25% owner, testified on April 12, 2006, that he projected an annual revenue of $1.8 million for the Debtor. He testified that while the Debtor had lost money in January and February, 2006, the third and fourth quarters were historically the Debtor's best quarters. He testified that the addition of Macy's to the Vancouver Mall, along with the introduction of a few new product lines, should increase the Debtor's business. He also testified that the Debtor has lowered its costs by reducing 10 staff position in July and August of 2005. Furthermore, prior supply problems have been resolved, thereby decreasing sales costs by six percent. Mr. Thompson based his projections on the Debtor's history and his experience as the owner of this and other furniture stores. Lastly, considering the Debtor's lack of debt, refinancing or borrowing to pay the past due Lease obligation is clearly feasible. The Court concludes that the requirements of 11 U.S.C.

MEMORANDUM DECISION - 5

§ 365(b)(1)(B) and (C) have been met, but that the Debtor cannot assume the Lease unless it effects a prompt cure by paying the past due Lease obligations in equal monthly installments through January 31, 2007, or by paying the proposed monthly payment and refinancing the remaining debt no later than September 29, 2006, or a similar arrangement.

Westfield also contends that if the Debtor assumes the Lease, its claim for prepetition rent is entitled to treatment as an administrative expense pursuant to 11 U.S.C. § 503; however, a majority of the cases reviewed hold that an administrative expense claim for prepetition rent arises only in the event the trustee or debtor in possession rejects a lease that had been assumed postpetition. A debtor's postpetition assumption of an executory lease transforms the prepetition claims of the lessor, once not cured, into new claims arising postpetition. Adventure Res. Inc. v. Holland, 137 F.3d 786, 798 (4th Cir. 1998). Thus, if a lease is assumed, any subsequent postpetition breach or rejection of the lease creates an administrative expense claim. See, e.g., In re Mushroom Transp. Co., 78 B.R. 754, 759 (Bankr. E.D. Pa. 1987) (citing N.L.R.B. v. Bildisco & Bildisco, 465 U.S. 513, 531-36 (1984)).

This analysis is further supported by reading 11 U.S.C. § 365(b)(1)(A) requiring a prompt cure, in conjunction with 11 U.S.C. § 1129(a)(9) requiring that all administrative expenses be paid in cash by the effective date of the Plan of Reorganization (Plan). If on assumption of the Lease, all debtors would be required to pay all past due prepetition rent payments by the effective date of the Chapter 11 Plan, it would not be necessary to have a statutory provision requiring a prompt cure under § 365(b)(1)(A). The cases cited by both the Debtor and Westfield are almost universally decided in the context of a postpetition breach, and hold in such situations that a landlord is entitled to an administrative claim for all rent after assumption. Because the Lease in this case has not been assumed and subsequently

breached, Westfield's claim for prepetition rent is not entitled to treatment as an administrative expense claim at this time.

The final issue is whether Westfield's attorney fees must be paid in order for the Debtor to assume the Lease. 11 U.S.C. § 365(b)(1)(B) requires that the debtor in possession "compensate the landlord for any actual pecuniary loss resulting from a default under an unexpired lease, before assuming the lease." In re Shangra-La, Inc., 167 F.3d 843, 848 (4th Cir. 1999). While § 365(b)(1)(B) does not create an independent right to an award of attorneys' fees, when the terms of a lease provide for attorney fees and costs, and these are permitted by state law, a landlord is entitled to them under 11 U.S.C. § 365(b)(1)(B) as a condition of a debtor's assumption of the lease. Shangra-La, 167 F.3d at 849; In re Westside Print Works, Inc., 180 B.R. 557, 564 (9th Cir. BAP 1995); In re F & N Acquisition Corp., 152 B.R. 304, 308 (Bankr. W.D. Wash. 1993).

While Westfield originally pointed to Section 2.06 of the Lease to support its request for attorney fees and costs, at the May 8 hearing, Westfield brought to the Court's and Debtor's attention Section 20.09 of the Lease. The Court finds that Section 2.06 <u>alone</u> does not necessitate a cure of Westfield's attorney fees and costs. This general section merely defines as "Additional Rent" "all sums of money required to be paid by Tenant under this Lease." Thus, the Lease under a different section must specify that the Debtor is required to pay attorney fees and costs.

Section 20.09 under Article XX "Bankruptcy or Insolvency" specifically provides for the payment of attorney fees and costs:

> If, in the context of Tenant's bankruptcy case, Landlord is compelled at any time to incur any expense, including attorneys' fees, in enforcing or attempting to enforce the terms of this Lease or to enforce or attempt to enforce any actions required under the Bankruptcy Code to be taken by the Trustee or by Tenant, as

MEMORANDUM DECISION - 7

> Debtor-In-Possession, then the sum so paid by Landlord . . . shall be immediately
> due and payable by the Trustee or by Tenant's bankruptcy estate . . . .

The Court generally concludes that Section 20.09, in conjunction with Section 2.06, creates a pecuniary loss under 11 U.S.C. § 365(b)(1)(B) for which Westfield must be compensated in order for the Debtor to assume the Lease.

The Court initially observes that the terms of Section 20.09 limit any attorney fees and costs to those incurred "in the context of Tenant's bankruptcy case." The Debtor filed bankruptcy on August 16, 2005. Consequently, any attorney fees and costs incurred prior to this date are not recoverable under the terms of the Lease for purposes of 11 U.S.C. § 365(b)(1)(B). The Court is aware of only $50.00 in attorney fees that were filed with this Court and incurred prior to August 16, 2005.

The majority of the fees incurred are for services provided postpetition and can be broken down into several categories: (1) fees related to Westfield's motion for relief from stay, (2) Westfield's motion to compel payment of postpetition Lease charges, (3) fees incurred in objecting to the Debtor's motion to assume, (4) fees related to Westfield's corresponding motion to compel rejection and (5) in objecting to the Debtor's disclosure statement.

The Court concludes that the fees incurred by Westfield's counsel postpetition qualify as actions by Westfield to "enforc[e] or attempt[] to enforce the terms of this Lease" or "to enforce or attempt to enforce any actions required under the Bankruptcy Code to be taken by the Trustee or . . . Debtor-In-Possession." In regards to the relief from stay motion, Westfield alleged that relief from the stay was warranted because the Lease had terminated prepetition and the Debtor was not paying its postpetition Lease obligations. In moving for relief from stay on this basis, Westfield was attempting to enforce the terms of the Lease. At the same time the relief from stay motion was filed, Westfield also filed a motion to compel payment of

MEMORANDUM DECISION - 8

the postpetition lease charges. Although relief from stay was denied, the motion to compel payment was granted. The Court ordered the Debtor to pay the lease charges for the second half of August, 2005. Payment of postpetition lease obligations is required by 11 U.S.C. § 365(d)(3). These fees were incurred to enforce an action required by the Bankruptcy Code. Likewise, Westfield was compelled to file these motions in that such action was necessary to protect its interests both under the Lease and the Bankruptcy Code.

The bulk of the fees at issue relate to the Debtor's motion to assume the Lease and Westfield's corresponding motion to compel rejection. Under 11 U.S.C. § 365(d), the trustee (or in this case the debtor-in-possession) is required to either assume or reject an unexpired lease or contract within a specific time period, and this section sets forth the requirements that must be met in order to assume. Westfield incurred these fees to ensure that this Code provision, and the additional sections setting forth the prerequisites for assumption, were met. Such fees fall within the language of 20.09.

Lastly, Westfield incurred fees in objecting to the Debtor's proposed disclosure statement. Westfield objected on the basis that it does not provide adequate information, fails to provide a prompt cure, and feasibility. Again, the Debtor is required to set forth certain information in the disclosure statement. See 11 U.S.C. § 1125. Westfield's objection was an action to enforce the requirements the Debtor has under the Code regarding disclosure. Such fees therefore fall within the language of 20.09.

Based on the above, the Court concludes that except for the fees incurred prepetition, the attorney fees sought by Westfield are provided for by the terms of the Lease in section 20.09. Such fees therefore must be paid as part of the cure amount so long as they are reasonable.

MEMORANDUM DECISION - 9

Westfield concedes that this Court may determine the reasonableness of its fees. See In re Westworld Cmty. Healthcare, Inc., 95 B.R. 730, 734 (Bankr. C.D. Cal. 1989); In re BAB Enters., Inc., 100 B.R. 982, 984 (Bankr. W. D. Tenn. 1989).

The time records filed with the Court and provided to Debtor's counsel contain numerous entries that have been redacted. The Court agrees that the Debtor cannot adequately review or make an informed objection as to the reasonableness of the fees based on the copy provided. Nearly every time entry contains some information that has been redacted. Although Westfield has supplied the Court with a complete copy for an in camera review, the Court is unwilling to go through these entries line by line to determine reasonableness. Nor has Westfield provided a satisfactory explanation as to why such information cannot be disclosed to the Debtor as few, if any, of the redactions would be protected by the attorney/client privilege in this context. The extensive redactions made by Westfield make it impossible for the Debtor to perform a complete fee analysis. The issue of the reasonableness of the fees is therefore continued to June 7, 2006 at 8:30 a.m. Westfield is to provide Debtor's counsel with an unredacted copy by May 23, 2006, for review. Any redaction must be specific, limited and explained in detail as a separate attachment, given the strong bankruptcy code policy of allowing debtors in these situations to object to unreasonable attorney fees and costs they must pay. An objection to the fees requested must be filed by Debtor by May 30, 2006, and Westfield has until June 2, 2006, to file a response. At the June 7, 2006 hearing, the Court will also rule on the Debtor's motion to assume and Westfield's corresponding motion to reject. The motion to assume will be denied and motion to reject granted unless the Debtor proposes to pay the past due obligation in equal monthly installments through January 31, 2007, or pay the proposed monthly payment and refinance

the remaining debt no later than September 29, 2006. It is only under these, or similar, conditions that the Debtor will be able to satisfy the requirement of a prompt cure under 11 U.S.C. § 365(b)(1)(A).

DATED: May 18, 2006

*Paul B. Snyder*
_____
Paul B. Snyder
U.S. Bankruptcy Judge

MEMORANDUM DECISION - 11