PAUL B. SNYDER
United States Bankruptcy Judge
1717 Pacific Ave, Suite 2209
Tacoma, WA 98402

✓ FILED
___ LODGED
___ RECEIVED

June 16, 2006

MARK L. HATCHER
CLERK U.S. BANKRUPTCY COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA
_____ DEPUTY

**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF WASHINGTON AT TACOMA**

| | |
|---|---|
| In re:<br><br>AMERICA THE BEAUTIFUL DREAMER INC.,<br><br>Debtor. | Case No. 05-47435<br><br>**MEMORANDUM DECISION**<br><br>**NOT FOR PUBLICATION** |

This matter came before the Court on May 8, 2006 and June 7, 2006 on the issue of the reasonableness of the attorney's fees and costs requested by Westfield Corporation, Inc. (Westfield) as a condition of America the Beautiful Dreamer Inc. (Debtor) assuming the lease at Westfield Shopping Center (Lease) under 11 U.S.C. § 365(b)(1)(B). Based on the pleadings and arguments presented, the Court's findings of fact and conclusions of law are as follows:

**FINDINGS OF FACT**

On December 29, 2005, the Debtor filed a Motion to Assume Unexpired Lease of Store Number 104 at Westfield Shopping Center. Westfield opposed the motion to assume the Lease, and filed a Motion to Compel Rejection of Debtor's Nonresidential Real Property Lease at Vancouver Mall. After oral argument, the Court entered a Memorandum Decision on May 18, 2006, concluding that Westfield was entitled to reimbursement of its attorney fees and

MEMORANDUM DECISION - 1

costs as a component of the Debtor's cure under 11 U.S.C. § 365(b)(1)(B). The Order on Motions to Assume or Reject Unexpired Lease continued the matter to June 7, 2006, on the issue of the reasonableness of the requested fees. The order also required Westfield to file supplemental time records by May 23, 2006, and set a schedule for additional briefing by both parties.

## CONCLUSIONS OF LAW

As stated in the Court's May 18, 2006 Memorandum Decision, the Court may determine the reasonableness of the fees requested. See In re Westworld Cmty. Healthcare, Inc., 95 B.R. 730, 734 (Bankr. C.D. Cal. 1989); In re BAB Enters., Inc., 100 B.R. 982, 984 (Bankr. W. D. Tenn. 1989).

Westfield has submitted time records indicating that the total attorney fees and costs incurred in this case is $93,403.56. These records reflect services provided by Westfield's counsel in Los Angeles, California, Katten Muchin Rosenman LLP (Katten Muchin), and Debtor's local counsel, Stoel Rives LLP (Stoel Rives), with offices in Portland, Oregon and Seattle, Washington. Westfield, however, has indicated that it is willing to accept $69,000, that is the total amount of fees originally requested in their time records submitted in regards to the motion to assume/reject, and in response to the Court's May 23, 2006 deadline.

As an initial matter, Westfield concedes that the time records originally filed and admitted into evidence actually total $63,812.14, not $69,000 as alleged. The error was apparently due to an inadvertent double-counting of approximately $5,400 in fees and costs for Stoel Rives. As the time records submitted by Westfield on two occasions total $63,812.14, not $69,000, and these are the records that the Debtor had the opportunity to review, the Court will consider this figure as the total amount of fees sought.

MEMORANDUM DECISION - 2

**1. Redacted Entries**

In the time records originally admitted into evidence, Westfield had redacted approximately 180 entries. In the May 18, 2006 Memorandum Decision and Order, the Court required Westfield to provide Debtor's counsel with an unredacted copy, and further indicated that any remaining redactions be specific, limited and explain why the redacted portion is privileged. The re-filed time records contain 40 redactions based on attorney-client and work product privileges. The redacted time entries total $8,108 in attorney charges.

Billing records are generally not protected privileged communications. Time records, however, that reveal litigation strategy or client confidences may fall within the privilege. See Clarke v. Am. Commerce Nat'l Bank, 974 F.2d 127, 129 (9th Cir. 1992). The Court has reviewed the redacted entries in camera and concludes that fees for these services should be denied. These entries do not reveal particular litigation strategy or client confidences that would protect them from disclosure. By filing redacted time entries, Westfield has denied the Debtor the opportunity of conducting a meaningful review of the attorney fees sought. This is an unreasonable approach, particularly when the entries do not reveal any privileged information and the Debtor is asked to pay for the services provided. Westfield's counsel stated at the June 7, 2006 hearing that his client is aware that non-disclosure of this information may result in denial of these fees, but has chosen to assume that risk. Counsel can seek payment of such fees from its client, but the Debtor will not be made responsible for payment as a condition of assuming the Lease. Accordingly, Westfield's fee request is reduced by $8,108.

Although unclear from the objection filed, the Debtor also appears to object to allowance of any fees for services billed on the same date as the redacted entries. The

MEMORANDUM DECISION - 3

Debtor alleges that such fees total $6,740. The Debtor has not stated that such fees are unreasonable. There is no basis for disallowing the fees merely because they were billed on the same date as a redacted entry. The Debtor's objection on this ground is denied.

**2. <u>Attorney Conferences and Conference Calls</u>**

The time records contain numerous conference calls among Westfield's counsel at Katten Muchin and between Katten Muchin and Stoel Rives. Nearly every entry by Stoel Rives contains billings for time spent either in a conference call or sending or reviewing an email with counsel at Katten Muchin. For example, between October 3, 2005 and October 31, 2005, Brandy Sargent (BAS) with Stoel Rives, bills for seven conference calls between herself and Dustin Branch at Katten Muchin. Likewise, in Stoel Rives' invoice dated April 12, 2006, BAS and Andrew Guy (AAG), bill for approximately five telephone calls with Brian Huben at Katten Muchin and the exchange of seven emails. The time records for Katten Muchin for the same dates indicate that it also billed for these conferences. As counsel for the Debtor stated at the June 7, 2006 hearing, it was his client's preference to use out-of-state counsel to represent it in this proceeding. Although it is not uncommon for a party to hire out-of-state counsel to represent it in a bankruptcy case, and likewise hire local counsel to appear on occasion and to ensure compliance with the local court rules, it is unreasonable to require the Debtor to pay the added expense for duplication of tasks.

Such duplication also occurs among counsel within the respective law firms. For instance, on April 13, 2006, Leanse, Branch and Huben of Katten Muchin all bill for time conferring about this case. Other examples occur between Branch and Leanse on August 26, 2005, and between Branch, Frerichs (non-attorney) and Levine (non-attorney) on October 31, 2005. Numerous other entries appear in the time records indicating that counsel would

typically double-bill for inter-office conferences and conferences between the two law firms. Although there may be instances where billing by each party to a conversation is warranted, this is the exception, not the rule. Westfield's counsel has failed to demonstrate that it was reasonable to have several attorneys each bill for conferences among themselves, particularly as this case was not complex nor did it present novel issues of law.

The instances of double-billing in this case are numerous. Based on the time records provided, the Court is unable to determine with any precision the exact amount of time that was double-billed within the law firms and between out-of-state and local counsel. Clearly, however, a substantial amount of time was double-billed. Accordingly, the Court will reduce Westfield's attorney fees by $5,000.

### 3. Compensation for Non-Attorney Personnel

The Debtor argues that all fees requested for services performed by non-attorney personnel should also be denied. The amount at issue is approximately $2000. Reimbursement may be allowed for non-attorney personnel for services that require independent judgment and decision making. Reimbursement, however, is generally disallowed for purely clerical or secretarial tasks. See, e.g. Missouri v. Jenkins, 491 U.S. 274, 288, n.10 (1989); In re Busy Beaver Bldg. Ctrs., Inc., 19 F.3d 833, 848-49 (3rd Cir. 1994). The four individuals objected to by the Debtor include three paralegals and one librarian. The Court has reviewed the time records for the non-attorney personnel and determines that the fees sought and rates charged are reasonable and compensable.

### 4. Motion for Relief from Stay and Motion to Compel Payment

In reviewing the time records, the Court conservatively estimates that Westfield's counsel spent approximately 42 hours related to the motion for relief from stay and motion to

compel payment (21 hours by Katten Muchin and 21 hours by Stoel Rives). The fees for these services total approximately $13,000 (approximately $8,000 by Katten Muchin and $5000 by Stoel Rives). The Court concludes that the time spent on these tasks was unreasonable. Although Westfield was correct that half of the August 2005 payment owing for postpetition lease obligations had not been paid, the relief from stay issue was not complex. An appropriate fee to charge for these services is $6,000. Westfield's total fee request should therefore be reduced by $7,000.

Attorney's fees issues are always difficult for reviewing courts. However, even in the absence of an objection, a court has an independent duty to evaluate professionals' fees. Busy Beaver Bldg. Ctrs., 19 F.3d at 841. It is undisputed that the services provided by Westfield's counsel were thorough and professional. Counsel for Westfield were prepared and are excellent advocates for their client. However, it is difficult for this Court to approve as reasonable $93,000 in fees incurred by a lessor's attorney, when counsel for the Debtor indicates that his total fees incurred in this case will not exceed $40,000. Although the Court understands the precarious position a lessor faces when the lessee of a shopping center lease files bankruptcy, the risk in this case seemed relatively minimal. The Debtor stayed current on postpetition lease charges, so that the primary issue of contention was only whether the cure was prompt. Although the involvement of Westfield's attorneys was critical in resolving this issue, the amount of fees incurred do not correspond to the complexity of the issues that were raised. Accordingly, the Court determines that a reasonable fee award for Westfield is $43,704.14.

DATED: June 16, 2006

*Paul B. Snyder*
_____
Paul B. Snyder
U.S. Bankruptcy Judge

MEMORANDUM DECISION - 6